IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:15-PO-00062-GBW |
| | ) | |
| **ALVIN BRENT LANEY**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' AMENDED RESPONSE TO DEFENDANT'S MOTION TO DISMISS CHARGES AND MEMORANDUM OF LAW IN SUPPORT[1]

The United States of America hereby responds in opposition to Defendant's Motion to Dismiss Charges and Memorandum of Law in Support (Motion). Defendant argues that the instant charges should be dismissed for failing to provide a "statement establishing probable cause," and

---

[1] The United States filed its Response to Defendant's Motion to Dismiss Charges and Memorandum of Law in Support with the Clerk's office on June 12, 2015. The Response was entered into the Case Management/Electronic Case Files (CM/ECF) system on June 22, 2015. Doc 7. Defendant filed Defendant's Reply in Support of His Motion to Dismiss Charges and Memorandum of Law in Support on June 29, 2015. Doc 9. In Defendant's Reply defendant cited to a paragraph from the United State's response which reads:

> Officer Mandrick did not cite Defendant with "failing to stop a vehicle when directed to do so by a Forest Officer" pursuant to 36 C.F.R. § 261.10(m). However, the United States would note that fatal jurisdictional flaw in the charge which was filed on June 12, 2015 as count two of the information in this matter. The Forest Service also had jurisdiction over Parker's failure to stop his vehicle because his acts and omissions took place "in the National Forest System" for the purposes of § 261.1(a)(1).

Doc 9 at 2, citing to Doc 7 at 10. In reviewing the United States' Response, an error in editing was discovered, and it was determined that the entire last paragraph of the Response, consisting of three unrelated sentences, had been added inadvertently prior to filing. Doc 7 at 10. The United States now corrects this error by filing the instant Amended Response which does not include the original Response's final paragraph.

for failing to describe "the actions, events, conduct, or other information as to how the regulation was violated." Motion at 3. In the alternative, Defendant urges dismissal under a theory that the Forest Service officer who detained him did so without jurisdiction or authority. As discussed below, there was no "fatal flaw" in the violation notices served on Defendant and the Forest Service officer had jurisdiction over Defendant. As such, Defendant's Motion should be dismissed.[2]

1. **Factual and Procedural Background**

If this case went to trial, The United States expects that United States Forest Service (USFS) Officer Christopher Mandrick would testify as follows: On January 11, 2015, at approximately 3:00 p.m., in Catron County, New Mexico, Officer Mandrick was driving a marked patrol car southbound through the Gila National Forest on United States Highway 180 (Highway 180). *see* Statement of Probable Cause FBDI001L. Highway 180 runs south from the New Mexico Arizona Border down through the Gila National Forest. The portion of Highway 180 that runs through the Gila Forest is two lanes wide with traffic flowing in both directions. Officer Mandrick was on duty and was driving to the scene of an illegal dumping investigation. At the time, Highway 180 was slightly wet and a light mix of rain and snow was falling.

As Officer Mandrick approached mile post 15 on Highway 180, he was driving behind a silver station wagon. Both cars were traveling at approximately 50 miles per hour, which is the marked speed limit for that section of Highway 180. When Officer Mandrick was close to mile post 15, he observed a brown Ford pickup truck driving up behind his vehicle at a high rate of

---

[2] The Motion argues for the dismissal of the charges against him based on jurisdictional grounds. Where the Motion references the reasonableness of Officer Mandrick's stop, the United States presumes it is in only in relation to the dismissal argument. If Defendant also intends to make suppression arguments, the United States respectfully requests the opportunity to respond.

speed. The truck began tailgating Officer Mandrick, following at a distance of between approximately 30 to 40 feet for approximately four miles.

As the three vehicles approached mile post 19, the road curved to the right obscuring the driver's view of oncoming traffic. At that time, without using its turn signals and despite the double yellow line indicating a no passing zone, the brown Ford truck accelerated and drove into the oncoming traffic lane passing both Officer Mandrick and the silver station wagon at a speed exceeding 50 miles per hour. At this time, Officer Mandrick activated his emergency lights and the silver station wagon immediately pulled over to the side of the highway to allow Officer Mandrick to pass.

Officer Mandrick caught up to the brown Ford truck on a relatively straight portion of Highway 180 featuring a gentle down grade, wide shoulders, and a marked speed limit of 55 miles per hour. As Officer Mandrick began following the brown Ford truck and noted that it was traveling at approximately 70 miles per hour, Officer Mandrick activated his siren. The truck continued driving for approximately 1.5 miles before pulling over to the shoulder of the northbound lane of Highway 180 near mile post 21 next to a parked Catron County deputy sheriff.

Once the pick-up truck stopped, Officer Mandrick approached and asked Defendant, the driver, to turn off the truck's engine. Once the engine was shut off, Officer Mandrick asked Defendant for his identification at which point Defendant stated, "You have no authority to pull me over." Officer Mandrick again asked Defendant for his identification and Defendant responded "You can't pull me over." Officer Mandrick then told Defendant that if he did not produce his identification he would be arrested and Defendant then handed Officer Mandrick his driver's license. When Officer Mandrick asked Defendant why he had passed Officer Mandrick's car, Defendant stated, "I have to get to work." Officer Mandrick then issued Defendant Violation

Notice FBDI001K for violating 36 C.F.R. §261.3(a). *See* Ex 1 hereto. The Violation Notice issued by Officer Mandrick listed the regulation number for the offense charged as well as the time and the location at which the offense occurred.

Sometime later, Officer Mandrick prepared two additional violation notices: FBDI001L and FBDI001M. Violation Notice FBDI00L listed the offense of 36 C.F.R. §261.3(a), which it described as "resisting any forest officer." *see* Ex. 2 hereto attached. Violation Notice FBDI001M listed the offense of 36 C.F.R. §261.54(f), which it described as "operating a vehicle carelessly/wrecklessly [sic]." *see* Ex. 3 hereto attached. Officer Mandrick then prepared probable cause statements for violation notices FBDI001L and FBDI001M, and submitted the violations notices along with the corresponding probable cause statements to the Central Violations Bureau (CVB).[3] *see* Ex. 2 and 3.

On April 15, 2015, Defendant appeared for his initial appearance. Defendant did not waive the reading of the charges. United States Magistrate Judge Stephen M. Vidmar read Defendant each of the citations and their corresponding probable cause statements. Defendant requested a motions schedule.

On June 12, 2015, the United States filed a superseding information charging one count of violating 36 C.F.R. § 261.3(a): Interfering With a Forest Officer, Volunteer, or Human Resource Program Enrollee or Giving False Report to a Forest Officer and a one count of violating 36 C.F.R. § 261.10(m): Failing to stop a vehicle when directed to do so by a Forest Officer.[4]

---

[3] Violation Notice FBDI001K was never submitted to the CVB. Officer Mandrick voided out this citation and reissued it under FBDI001L.

[4] The United States has elected not to proceed against Defendant on a charge falling 36 C.F.R. §261.54. 36 C.F.R. §261.54 is titled "National Forest System Roads." A National Forest System road is defined as "a forest road other than a road which has been authorized by a legally

4

2. **Argument**

   a. Defendant's violation notice was not fatally flawed.

Defendant argues that the violation notice issued to him on January 11, 2015, is fatally flawed because it is "utterly bereft of any description of the actions, events, conduct, or other information as to how the regulation was violated." Motion at 3. While not acknowledged in Defendant's motion, at his arraignment the Court read him the probable cause statements for each of the citations. Therefore, it appears that Defendant's argument is that he was entitled to a charging document that clearly alleged the essential elements of the offenses charged prior to his initial appearance. Defendant's motion should be denied because there is no requirement that a defendant charged by violation notice receive a completed charging document prior his initial appearance in court.[5]

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (U.S. 1974); *see also United States v. Willie*, 941 F.2d 1384, 1400 (10th Cir. 1991)("[A]n information need only plead those facts and elements of the offense

---

documented right-of-way held by a State, county, or other local public road authority." 36 C.F.R. §261.2. The United States has been unable to locate a "legally documented right-of-way" over this particular portion of U.S. Highway 180. However, out of an abundance of caution, the United States opts to proceed on charges that do not relate to whether the conduct occurred on a National Forest System road.

[5] Defendant does not argue that the probable cause statements read to him at his initial appearance are insufficient. As noted above, the United States has filed a superseding information which informs Defendant of the facts and elements of the charged offenses sufficient to allow him to prepare his defense and protect him against double jeopardy. *Willie*, 941 F.2d at 1400. By filing this information, the arguments regarding the sufficiency of the probable cause statements are moot.

charged sufficient to inform the defendant of the charges against him to enable him to prepare a defense and to safeguard him from double jeopardy.")(citations omitted). "[E]ven an inadequate indictment satisfies due process if the defendant has actual notice [of the charges against him], such that [he] suffers no prejudice." *United States v. Odom*, 252 F.3d 1289, 1298 (11th Cir. 2001).

Federal Rule of Criminal Procedure 58 "contemplates that the charging document for a petty offense need not be as formal or require as much as an indictment or information would." *United States v. Kowallek*, 438 Fed. Appx. 889, 891 (11th Cir. 2011). "Specifically, a defendant must be informed of the charges against him at his initial appearance before a magistrate judge." *Id* (citing to Fed R. Crim P 58 (b)(2)). Where the defendant is informed of the charges against him at his initial appearance, including the factual allegations against him, he suffers no prejudice and due process is satisfied. *Id*. (rejecting the defendant's argument that she was prevented from preparing a defense by a generic citation, when, at her initial appearance, the magistrate judge explained the charges against her in greater detail than was clear from citation); *See also United States v. LeHouillier*, 935 F. Supp. 1146, 1148 (D. Colo. 1996)(as a practical matter a defendant seeking dismissal of a violation notice who had "not been required to waive any rights and still retain[ed] his right to plead not guilty and to have a trial," has not suffered any prejudice to his case at all.)

While Rule 58 may not require that violation notices contain as much information or present charges as formally as indictments or information, a "violation notice is the functional equivalent of an indictment or an information." *United States v. Moore*, 586 F.2d 1029, 1031 (4th Cir. 1978). Thus the rules regarding the issuance of arrest warrants and summonses on indictments or informations are instructive in determining when a defendant must be presented with a sufficient charging document. Pursuant to Rule 9, "[t]he court must issue a warrant--or at the

government's request, a summons--for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it." Both warrant and summons must conform to the requirements of Rule 4(b).[6] In relevant part, Rule 4(b) requires that both a warrant and summons must:

> [c]ontain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty; and
> [d]escribe the offense charged in the complaint.

Fed R. Crim Proc 4(b)(1)(A),(B). There is no requirement that a defendant be provided with a copy of the charging document, prior to the initial appearance or arraignment. Fed R. Crim P. 10(a)(1),(2) and 5(d)(1)(A).

When a violation notice is issued to a defendant, the defendant seldom receives a probable cause statement at the time of issuance. Instead they simply receive a citation that looks like Ex. 1. *see* http://www.cvb.uscourts.gov/sample.html (last visited 6/11/15). Once an issuing officer submits a copy of the violation notice along with the statement of probable cause to the CVB, the CVB "notifie[s] [defendant of their] court date by mail…usually within 4 to 8 weeks from issuance of the ticket." http://www.cvb.uscourts.gov/faq.html (last visited 6/11/15). In the instant case, the CVB mailed Defendant two United States District Court Notices to Appear, informing Defendant that he was scheduled to appear in court. *see* Ex. 4 and 5 hereto attached. The two Notices further informed Defendant that he was now being accused of two separate violations under new violation notices, FBDI001L and FBDI001M. The Notices to Appear also each contained brief statements of the offenses. *Id*. This is all of the information to which Defendant was entitled prior to his initial

---

[6] The rules for the issuance of a warrant or summons on a complaint are substantially the same. Fed R. Crim P. 4(a).

7

appearance. As noted above, at his initial appearance the Court not only informed Defendant of the nature of the two violations but also read Defendant both of the probable cause statements. Therefore, at his initial appearance, Defendant sufficiently apprised for the charges such he could defend himself and protect himself against double jeopardy in the future.

In addition, it should be noted that Defendant had access to the probable cause statements prior to his initial appearance. At the time of the issuance of the citation, Defendant was also issued a set of instructions. *see* Ex. 1. These instructions provide, in relevant part, "You have a right to know more about the charge against you and may obtain a complete statement of the charge by calling the Central Violations Bureau at 800-827-2982." *Id*. A similar statement was printed on each of the two Notices to Appear. *see* Ex. 4 and 5. Had Defendant called the toll-free number and requested the information he would have received a copy of the probable cause statements prior to his initial appearance. Defendant had access to the probable cause underlying the accusations against him but apparently chose not to avail himself of that access.

    b. Officer Mandrick had jurisdiction to issue defendant a citation for violating 36 C.F.R. §261.3(a).

Defendant argues that Officer Mandrick did not have jurisdiction to issue him a citation because he was traveling on a non-National Forest System road and the citation is not "appropriate for the protection of Federal property." Motion at 9. The scope of Part 261 Title 36 of the C.F.R. reaches beyond those acts or omissions which occur on Forest System roads or affect property of the United States administered by the Forest Service. Therefore, Officer Mandrick had jurisdiction to cite Defendant for a violation of 36 C.F.R. 261.3, and Defendant's Motion should be denied.

The United States Constitution provides: "Congress shall have the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other property belonging to the

8

United States." U.S. Const. Art. IV, § 3, cl.2. The Supreme Court has held: "the Property Clause gives Congress the power over the public lands 'to control their occupancy and to use, to protect them from trespass and injury, and to prescribe the conditions upon which others may obtain rights in them." *Kleppe v. New Mexico*, 426 U.S. 529, 540(1976)(citation omitted). The Supreme Court's well-settled precedent "establish[es this] broad power granted to the government in the property clause to regulate federal lands." *United States v. Vogler*, 859 F.2d 638, 641 (9th Cir. 1988) (holding that Congress has clearly conferred the power to regulate and manage national parks and forest to the Secretary of the Interior and Forest Service). Pursuant to 16 U.S.C. §551,

> The Secretary of the Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests…and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction…

16 U.S.C. § 551. Under the authority delegated in 16 USC § 551, the Secretary of Agriculture has issued a series of prohibitions listed in Part 261 of Title 26 of the C.F.R.. Pursuant to 36 C.F.R. §261.1, the scope of these prohibitions include instances where:

> An act or omission occurs in the National Forest System or on a National Forest System road or trail;
>
> An act or omission affects, threatens, or endangers property of the United States administered by the Forest Service; and
>
> An act or omission affects, threatens, or endangers a person using, or engaged in the protection, improvement or administration of the National Forest System or a National Forest System road or trail.

36 C.F.R. §261.1(a)(1)-(3). In the instant case, Officer Mandrick had jurisdiction pursuant to 36 C.F.R. §261.1(a)(1) because Defendant's acts occurred in the National Forest System. Additionally, Officer Mandrick had jurisdiction pursuant to §261.1(a)(1) because Defendant's acts affected, threatened, and endangered both people using the National Forest System, as well as

9

Officer Mandrick himself as he was engaged in the protection, improvement, and administration of the National Forest System.

Even assuming that Highway 180 is not a National Forest System road because a right of way at some point was granted to the State, county, or other local public road authority, a point the United States does not concede, Highway 180 is still part of the National Forest System.[7]

As the court noted in *United States v. Parker*,

> [E]xempting roads subject to an easement from the definition of "National Forest System road or trail" was expressly meant not to "in any way affect the Forest Service's jurisdiction to enforce traffic laws, to protect NFS lands underlying routes, or to regulate use, including use on valid rights-of-way." Travel Management; Designated Routes and Areas for Motor Vehicle Use, 70 Fed. Reg. 68,264, 68,275 (Nov. 9, 2005); see also id. at 68,283 ("Part 261-Prohibitions," paragraph 2) (noting that the comments at 68,275 applied to both § 261 and § 212)… Because the Forest Service's enforcement actions in Parker's case related to the "protect[ion of] NFS lands underlying routes" or the "regula[tion of] use," the Forest Service retained jurisdiction over those activities whether or not the road is not a National Forest System road.

*United States v. Parker*, 761 F.3d 986, 990 (9th Cir. 2014)(citations included)(concluding by it was "beyond argument" that, by running a business "predicated on dispatching snowmobiles into the National Forest…without obtaining the required special use permit," Defendant's activity "affect[ed], threaten[ed], or endanger[ed]" National Forest lands pursuant to 36 C.F.R. §261.1(a)(2)). In the instant case, whether or not Defendant was driving on a Forest System road, he committed acts in the National Forest System and endangered people using the Forest System and people protecting the Forest System. Defendant's acts all were well within the scope of 36

---

[7] The National Forest System is defined as "include[ing] all national forest lands and waters reserved or withdrawn from the public domain of the United States, national forest lands and waters acquired through purchase, exchange, donation, or other means, national grasslands and land utilization projects and waters administered under Title III of the Bankhead-Jones Farm Tenant Act (50 Stat. 525, 7 U.S.C. §1010-1012), and other lands, waters, or interests therein acquired under the Wild and Scenic River Act (16 U.S.C. §1271-1287) or National Trails System Act (16 U.S.C. §1241-1249). 36 C.F.R. §261.2

C.F.R. §261.1. Thus Officer Mandrick retained jurisdiction over those acts.

### 3. Conclusion

For the reasons stated above, Defendant's motion should be denied in its entirety.

DAMON P. MARTINEZ
United States Attorney

*/ss/electronically filed 7/6/2015*
ALEXANDER SHAPIRO
Assistant United States Attorney
555 S. Telshor, Ste. 300
Las Cruces, NM  88011

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.
_____
Alexander Shapiro
Assistant U.S. Attorney