### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Appellant,

v.                                                             No. 2:15-po-00062-RB

ALVIN BRENT LANEY,

      Defendant/Appellee.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Notice of Appeal by Plaintiff/Appellant United States of America ("the Government"). (Doc. 14.) The Government appeals the United States Magistrate Judge's Order Granting Defendant's Motion to Dismiss Charges (Doc. 13). Having reviewed the parties' submissions and arguments, the Court **REVERSES** the United States Magistrate Judge's Order Granting Defendant's Motion to Dismiss Charges and **REMANDS** the case for further proceedings consistent with this order.

### I.   BACKGROUND

The parties spend significant time arguing the facts of this case, notwithstanding that the relevant analysis is legal in nature. Still, the Court reviews the facts to explain how the case went awry. United States Forest Service Officer Christopher Mandrick pulled over the Defendant, Alvin Brent Laney, after Mr. Laney allegedly tailgated Officer Mandrick and passed him and another vehicle in a no-passing zone. (*See* Doc. 7-1 at 3.) Officer Mandrick issued a violation notice, citing Mr. Laney for resisting an officer and failure to stop. (*Id.* at 1.) Later, Officer Mandrick voided this notice and prepared two new violation notices, one for operating a vehicle carelessly and recklessly and another for resisting an officer. (*Id.*)

When Mr. Laney attended his initial appearance, a United States magistrate judge read Mr. Laney the charges and probable cause statements for both violation notices. (Doc. 11 at 4.) The statements of probable cause allege:

> While driving on US Highway 180 through the Gila National Forest in a fully marked Law Enforcement patrol vehicle, I observed a brown Ford pickup rapidly approach my vehicle from behind. The brown Ford pickup began "tailgating" my vehicle for approximately 4 miles on US 180, which is characterized by winding curves and steep mountain grades, and passed my vehicle and a civilian vehicle in front of me around a curve on a double-yellow line in a careless and reckless manner. Due to the wet road conditions, tailgating, and high rate of speed of the brown Ford pickup I believed the driver presented an immediate threat to the lives of the public and myself on the highway. I attempted to stop the brown Ford pickup by activating all emergency equipment on my vehicle and began following the brown Ford pickup which was travelling in excess of 70 mph in a posted 55 mph zone. The brown Ford pickup slowed to approximately 65 mph, but refused to pull over, even though the road shoulder at that part of US 180 is very wide and clear. I continued following the brown Ford pickup for approximately 1 and a half miles on US 180, along a stretch of the highway which is straight, flat, and has multiple . . . locations to pull off [at]. The brown Ford pickup stopped near a Catron County Sheriff's Office patrol vehicle and I notified Catron County Sheriff's Office dispatch that I had stopped a brown Ford pickup bearing New Mexico license plate MJF 514. I contacted the driver, who initially refused to identify himself and stated "You have no authority to pull me over." The driver was identified by New Mexico driver license #500462825 as Alvinbrent [sic] LANEY of Luna, NM.

(Doc. 7-1 at 3, 5.) Officer Mandrick charged Mr. Laney with resisting an officer specifically "for failing to yield to my fully marked patrol vehicle." (Doc. 7-1 at 3.)

A month later, Mr. Laney moved to dismiss the charges, alleging among other issues that Officer Mandrick lacked authority to stop Mr. Laney and issue a citation. (Doc. 2 at 1.) In addition, Mr. Laney alleged that he passed Officer Mandrick and the other vehicle "in a passing area" (*id.* ¶ 9) and that, "[b]ecause of road design at the location of the attempted stop, [Mr. Laney] continued to operate his motor vehicle until a safe location/turnout was reached" (*id.* ¶ 6).

After two extensions of time (Docs. 3, 5), the Government filed an Information (Doc. 1), the legal effect of which was to supersede the violation notices, *see infra* Section III(A).  The Information charged two counts.  Count 1 alleged that "[o]n or about January 11, 2015, the defendant, LANEY, in Catron County . . . threatened, resisted, intimidated and interfered with a forest officer engaged in or on account of the performance of his official duties in the protection, improvement, and administration of the National Forest System." (*Id.*)  Count 1 cites the same regulatory basis as the initial violation notice. (*Id.*)  Count 2 alleged that Mr. Laney "failed to stop a vehicle when directed to do so by a Forest Officer." (*Id.*)  Count 2 relies on a different regulation than previously cited. (*Id.*)  Notably, the Information did not allege the previous charge for operating a vehicle carelessly and recklessly.  (*Compare* Doc. 1 *with* Doc. 7-1 at 4.)

The Government then responded to Mr. Laney's Motion to Dismiss Charges.  (Doc. 7.)[1] The response focused on addressing Mr. Laney's original arguments, but also asserted in a footnote that "by filing [the Information], the arguments regarding the sufficiency of the probable cause statements [in the violation notices] are moot."  (Doc. 7-1 at 5 n.4.)  The Government also responded to Mr. Laney's jurisdictional argument, asserting that Officer Mandrick had jurisdiction to issue both citations.  (Doc. 7 at 9.)  The Government further asserted that "[i]f this case went to trial," Officer Mandrick would testify that he "was on duty and was driving to the scene of an illegal dumping investigation" when the incident occurred (*id.* at 2) and included Officer Mandrick's earlier statements of probable cause (Doc. 7-1).  In his reply, Mr. Laney asserted that the abandoned charge for operating a vehicle carelessly and recklessly provided the necessary

---

[1] Seven days after Mr. Laney's reply, the Government filed United States' Amended Response to Defendant's Motion to Dismiss Charges and Memorandum of Law in Support (Doc. 11).  The amended response is substantively the same as the response, except that it removes the last paragraph, described as "an error in editing."  (*Compare* Doc. 7 *with* Doc. 11.)  The magistrate judge notes that the amended response was untimely, but Mr. Laney did not object.  (Doc. 13 at 1.)  Since the revision does not impact the Court's decision, the Court relies on the initial response (Doc. 7) for this order.

foundation for the charges for resisting an officer, both in the violation notice and in Count 1 of the Information.  (Doc. 9 at 2.)  Mr. Laney argued that without "a legitimate basis to effectuate the stop . . . in the first instance," Count 1, which charges resisting an officer, is baseless.  (*Id.*)

Without holding a hearing, the magistrate judge granted Mr. Laney's Motion to Dismiss Charges.  (Doc. 13.)  Understandably, but erroneously, the magistrate judge took the parties up on their offer to evaluate the facts.  First, the magistrate judge noted that the Information failed to charge Mr. Laney for operating a vehicle carelessly and recklessly and determined that the Information consequently "alleges a violation commencing at the point Officer Mandrick engaged his lights and siren . . . ."  (*Id.* at 3.)  Based on this assumption, the magistrate judge found that "the undisputed evidence shows that, as a matter of law, [Mr. Laney] could not have committed" the offenses charged in the Information.  (*Id.* at 5–6.)  The magistrate judge so found "because the undisputed evidence shows that [Mr. Laney] did not interfere with Officer Mandrick's official duties" after Officer Mandrick initiated the stop, and Mr. Laney did not fail to stop because he stopped 1.5 miles later.  (*Id.* at 6.)  The magistrate judge further found that Officer Mandrick lacked authority to initiate the stop because "none of the facts before the Court indicate that anyone was endangered during the 1.5 miles it took [Mr. Laney] to pull over."  (*Id.* at 7.)

On appeal, the Government argues that the magistrate judge was obliged to limit review to "the Information on its face to determine whether the allegations, if true, were sufficient to establish a violation of the charged offenses."  (Doc. 16 at 15.)  The Government also explicitly asserts, for the first time on appeal, that "the facts of the case are disputed."  (*Id.*)

This case's tortured procedural history—caused in large part by numerous missteps by the Government—distracts from the purely legal considerations necessary to decide the case.  Many of the arguments proffered in Mr. Laney's original motion are moot because the Government filed

4

its Information after the motion was filed.  It's true that the multiple charging documents presented a moving target for Mr. Laney's defense.  (*See* Doc. 9 at 2 ("It is, indeed, difficult for [Mr. Laney] to understand the charges against him, let alone mount an appropriate defense when the [Government] cannot itself even determine what misdemeanor charge(s) to levy for which it can muster some authority and jurisdiction.").)  Yet, the Federal Rules of Criminal Procedure allow such changes.  *See infra* Section III(A).  Notwithstanding the fact that the Information is not so titled, the Information operated to supersede the violation notices.  *Id.*

Mislead by the parties' focus on the facts, the magistrate judge determined that the charges in the Information were limited to the scope of Officer Mandrick's earlier probable cause statement.  *See infra* Section III(A).  That determination led the magistrate judge astray.  Believing that the facts were undisputed, she nevertheless made factual findings.  (*See* Doc. 13 at 5–6, 7.)  Then relying on those findings, she determined that the Information was legally insufficient and upheld Mr. Laney's jurisdictional defense.  (*Id.*)  As further explained below, the Court may only consider the facts alleged in the Information, which, taken as true, are legally sufficient to list the elements of the offenses, apprise Mr. Laney of the charges, and protect Mr. Laney against the risk of double jeopardy.  *See infra* Section III(C).  Thus, the appeal should be granted.

## II.     LEGAL STANDARD

Federal Rule of Criminal Procedure 58(g)(2)(A) provides that "[e]ither party may appeal an order of a magistrate judge to a district judge . . . if a district judge's order could similarly be appealed."  The government may appeal a district judge's order to dismiss an information as long as "subsequent prosecution would not be barred by the double jeopardy clause."  *United States v. King*, 581 F.3d 800, 801 (10th Cir. 1978) (citing 18 U.S.C. § 3731).  The double jeopardy clause

does not attach until the trier of fact has jurisdiction to try the question of guilt or innocence. *Id.* As such, the Government may appeal the magistrate judge's order to dismiss the indictment based on legal grounds. *See id.*

Typically, appellate courts only reverse indictment dismissal based on an abuse of discretion. *United States v. Wood*, 6 F.3d 692, 694 (10th Cir. 1993). "However, when the dismissal involves issues of statutory interpretation, or when the sufficiency of a charge is challenged, we review the [trial] court's decision de novo." *United States v. Giles*, 213 F.3d 1247, 1248–49 (10th Cir. 2000), *as revised* (June 26, 2000) (citing *Wood,* 958 F.2d at 974). Review here is de novo because the magistrate judge dismissed the charges pursuant to the sufficiency of the charging document (Doc. 13 at 6) and, alternatively, based on statutory interpretation (Doc. 13 at 8).

### III.  DISCUSSION

#### A. *Scope and Validity of the Information*

Depending on the type of offense, the government may initiate prosecution in different ways. *See* Fed. R. Crim. P. 7(a); 58(b)(1). Whereas the government must obtain an indictment to charge a felony, Fed. R. Crim. P. 7(a), the government may prosecute a misdemeanor by filing a charge or information, Fed. R. Crim. P. 58(b). Moreover, if the charged misdemeanor is a "petty offense," the government need only issue a citation or a violation notice. *Id.*; *see also* 18 U.S.C. § 19 (stating that a petty offense is a Class B or C misdemeanor).

Unlike case law on indictments and informations, appellate case law on the sufficiency of charging documents for petty offenses is, unsurprisingly, sparse. For petty offenses committed in federal enclaves, "[a] violation notice is the functional equivalent of an indictment or an information." *United States v. Moore*, 586 F.2d 1029, 1031 (4th Cir. 1978). However, as a

lesser crime, *see* 18 U.S.C. § 19, petty offenses understandably require a less formal process.  *See United States v. Boyd*, 214 F.3d 1052, 1057 (9th Cir. 2000) ("Congress determined that accusations of any offenses greater than petty offenses need the heightened accountability afforded by the procedures used to obtain an indictment, information, or complaint."); *United States v. Kowallek*, 438 F. App'x 889, 890–91 (11th Cir. 2011) ("Rule 58 contemplates that the charging document for a petty offense need not be as formal or require as much as an indictment or information would.").  Even so, Rule 58 protects a defendant's due process rights by requiring that the defendant "be informed of the charges against him at his initial appearance before a magistrate judge."  *Kowallek*, 438 F. App'x at 891; *see also* Fed. R. Crim. P. 58(b)(2).

    Citations and violation notices also lack rules governing amendments and superseding instruments.  Whereas Federal Rule of Criminal Procedure 7(e) prohibits amendments to informations where "an additional or different offense is charged or a substantial right of the defendant is prejudiced[,]" no such rule explicitly governs citations and violation notices.  *Compare* Fed. R. Crim. P. 58 *with* Fed. R. Crim. P. 7(e).  In *United States v. Talbot*, 51 F.3d 183, 186 (9th Cir. 1995), the Ninth Circuit determined that "Rule 7(e) does not apply" when the government substitutes a citation with an information prior to trial.  The court determined that the government did not violate Rule 7(e) by filing an information that added a count because the government did not amend an information.  Instead, the government merely "substituted one accusatory instrument—the citation—with another—the information—prior to the commencement of trial."  *Id.*  The additional charge was permissible because "[s]uperseding accusatory instruments can contain additional counts not charged in prior instruments."  *Id.* (citing *United States v. Brewer*, 681 F.2d 973, 974 (5th Cir. 1982) (upholding information, superseding an indictment, which charged two additional counts)).

7

The determination in *Talbot*, 51 F.3d at 186, is persuasive, as it follows the plain language of the rules. The Federal Rules of Criminal Procedure do not explicitly limit amendments to citations or violation notices. *Compare* Fed. R. Crim. P. 7(e) (limiting amendments for informations) *with* Fed. R. Crim. P. 58(b) (allowing the government to use an information, citation, or violation notice to prosecute a petty offense). The Court's decision, to allow the Information to supersede the previous violation notices, achieves the same practical effect that the rules achieve generally, requiring more process only for more serious crimes. *See* Fed. R. Crim. P. 7(a) (requiring an indictment to prosecute a felony); Fed. R. Crim. P. 58(b)(1) (requiring at least an information or complaint to prosecute most misdemeanors); Fed. R. Crim. P. (b)(1) (requiring only a citation or violation notice to charge a petty offense). Common law extends this graduated approach by, for example, denying defendants charged with petty offenses the right to a jury trial. *See Duncan v. State of La.*, 391 U.S. 145, 159 (1968). The rules could require more process for defendants of petty offenses, but the courts cannot impose such a requirement. *See United States v. Begay*, 602 F.3d 1150, 1155 (10th Cir. 2010) ("[C]ourts are not permit[ted] . . . to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment, or to impose on law enforcement officials [their] personal and private notions of fairness . . . .") (internal quotations omitted).

Here, the Information superseded the violation notices, effectively wiping the slate clean. *See Talbot*, 51 F.3d at 186. The Information changed the charges against Mr. Laney in two important ways. First, the Count 1 charge for resisting an officer was not limited to "failing to yield to [Officer Mandrick's] fully marked patrol vehicle" like the previous probable cause statement. (*Compare* Doc. 1 *with* Doc. 7-1 at 3.) Second, Count 1 added "threaten[ing and] . . . intimidat[ing]" as alternate elements for the resisting an officer charge. (*See* Doc. 1.)

8

Consequently, the charge in Count 1 applies to any of Mr. Laney's actions during the incident that threatened or intimidated Officer Laney, not just actions that resisted him.  (*Compare* Doc. 1 *with* Doc. 7-1 at 3.)  By superseding the violation notice, the Information dramatically changed the application of the previous charge for resisting an officer.

### B. Considering Facts Outside of the Information

The Federal Rules of Criminal Procedure limit pretrial motions to "any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12; *see also United States v. Hall*, 20 F.3d 1084, 1086 (10th Cir. 1994) (citing a previous version of Fed. R. Crim. P. 12(b), limiting pretrial motions to "[a]ny defense, objection, or request which is capable of determination without trial of the general issue").  A pretrial motion to dismiss may be granted only if the motion either (1) doesn't address the merits of the case or (2) doesn't require a trial to resolve a dispute on the merits of the case.  *See United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) ("First, some pretrial motions simply do not implicate the general issue at all. . . . Second, other motions may implicate the general issue, but they present themselves for resolution before trial because they don't require a *trial* of the general issue.").

Typically, a pretrial motion to dismiss evaluates a charging document "solely on the basis of the allegations made on its face, and such allegations are to be taken as true."  *Hall*, 20 F.3d at 1087 (quoting *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).  Such a motion "is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence."  *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006).  The rules limit pretrial review because only the trier of fact has "jurisdiction to decide a defendant's innocence or guilt."  *United States v. King*, 581 F.2d 800, 801–802 (10th Cir. 1978) (considering a case where the government claimed a factual dispute).

An exception exists, however, that allows courts to consider "evidence beyond the four corners of the [charging document]" to determine the merits of the case. *Hall*, 20 F.3d at 1087–88. Courts may consider outside facts in "limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts . . . ." *Id.* at 1088. Notably, judges may consider facts beyond those alleged in the charging document only where undisputed facts present a pure issue of law and not to remedy other oversights in the prosecution of a case. *See United States v. Fadel*, 844 F.2d 1425, 1434 n.10 (10th Cir. 1988).[2] Instead, courts must focus on whether, "*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." *Hall*, 20 F.3d at 1088. Trial courts are cautioned that such an exception "is indeed . . . rare." *Id.*

A court cannot grant a pretrial motion to dismiss where "contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion . . . ." *Pope*, 613 F.3d at 1259. In *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991), the parties agreed that the defendant had stolen computer programming source code. *Brown*, 925 F.2d at 1303, 1304. The court determined that the source code didn't qualify as physical "goods, wares, or merchandise," the theft of which the statute prohibited. *Id.* at 1309. Consequently, the charges were appropriately dismissed because the undisputed facts were legally insufficient to violate the statute. *Id.* Conversely in *Pope*, the defendant proffered facts to argue that prosecution for possession of a firearm was unconstitutional as applied to him, but the government asserted contradictory facts. *Pope* 613 at 1257–58, 1261–62. The court emphasized that, to

---

[2] In *Fadel*, the district court dismissed charges "based upon the failure of the United States Attorney to do his job," where the government failed to produce a witness. *Fadel*, 844 F.2d at 1428. Although the record "reveal[ed] a lack of adequate preparation and a failure to timely respond to defense motions and requests of the court[,]" the appellate court still determined that factual disputes existed, requiring determination by a jury. *Id.* at 1434. The court "in no way condon[ed] the conduct of government counsel," but determined that the "misdeeds of government counsel . . . [did] not warrant the drastic remedy of dismissal of the indictment." *Id.* at 1434 n.10.

consider facts outside the charging document, the evidence "must be undisputed in the sense that it is *agreed* to by the parties—neither side having expressed any objection to its consideration or any objection to its completeness and accuracy." *Id.* at 1261.  The parties disagreed as to operative facts so the court refused to consider the merits of the defendant's constitutional claim.  *Id.* at 1257.  Instead, the court could only review the "Spartan prose" of the indictment and the facts alleged therein.  *Id.*

Here, the Court cannot consider facts beyond the Information because the parties dispute the operative facts.  Relative to Count 1, Officer Mandrick had jurisdiction to address acts "affect[ing], threaten[ing], or endanger[ing] a person . . . engaged in the protection, improvement or administration of the National Forest System . . . ."  36 C.F.R. § 261.1(a)(3).  According to Officer Mandrick, Mr. Laney tailgated him on a wet road while sleet was falling (Doc. 7-1 at 3), and the parties disagree about whether Mr. Laney passed Officer Mandrick in a passing zone (*compare* Doc. 2 ¶ 9 *with* Doc. 7 at 2).  Resolution of these facts will help determine whether Mr. Laney "threaten[ed] or endanger[ed]" Officer Mandrick.  36 C.F.R. § 261.1(a)(3).  The Government asserted that Officer Mandrick was on his way to investigate an illegal dumping site.  (Doc. 7 at 2.)  Officer Mandrick's destination will help the trier of fact assess whether he was "engaged in . . . the improvement or administration" of the Gila National Forest.

Relative to the jurisdictional question in Count 2, the parties and magistrate judge focus on whether the incident "occur[red] in the National Forest System or on a National Forest System road or trail."  36 C.F.R. § 261.1(a)(1).  (*See, e.g.*, Docs. 13 at 7; 16 at 16–20; 19 at 9–11.)  At this stage, however, the Court need not resolve the legal issue, because the regulation providing jurisdiction for Count I could also have conveyed jurisdiction for Count 2.  Officer Mandrick had jurisdiction to enforce the Count 2 violation if Mr. Laney's failure to pull over "affect[ed] . . . or

endanger[ed]" Officer Mandrick while he was "engaged in the protection, improvement or administration" of the Gila National Forest.  36 C.F.R. § 261.1(a)(3).  If Mr. Laney could have pulled over sooner (*compare* Doc. 2 ¶ 6 *with* Doc. 7-1 at 3), a trier of fact could find that Mr. Laney "affect[ed]" Officer Mandrick's efforts to enforce the Count 1 violation.  36 C.F.R. § 261.1(a)(3).  Similarly, if the road was wet and sleet was falling (*see* Doc. 7-1 at 3), a trier of fact could find that Mr. Laney's failure to stop "endanger[ed]" Officer Mandrick while he attempted to enforce the Count 1 violation.  36 C.F.R. § 261.1(a)(3).  The determination of these disputed facts will assist in deciding Officer Mandrick's jurisdiction to enforce Count 2.  *See Pope*, 613 F.3d at 1259 ("If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.)

Consequently, Mr. Laney's jurisdictional defense for both counts, like the defendant's defense in *Pope*, depends on the determination of facts.  *See Pope*, 613 F.3d at 1261.  These same contested facts influence the outcome of the charges.  With operative facts in dispute, the Government's previous failure to object is not dispositive.[3]  *See Hall*, 20 F.3d at 1088 (considering additional facts only because (1) the operative facts were undisputed and (2) the government failed to object).  Thus, a trial on the merits is warranted to determine the facts.

### C.  *Sufficiency of the Information*

An information or indictment must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  Fed. R. Crim. P. 7(c)(1).  Each count must contain "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."  *Id.*  "Sufficiency of an

---

[3] The Government's failure to object is one of several missteps in its prosecution of the case.  (*See* Doc. 13 at 1.)  Even so, this Court cannot uphold the "drastic remedy of dismissal" merely to punish the Government's untimely and inadequate responses.  *See Fadel*, 844 F.2d 1425.

indictment or information depends upon whether it contains the elements of the offense sought to be charged, apprises the defendant of the charges he must meet and affords protection against the risk of double jeopardy in the event of conviction." *United States v. Walker*, 947 F.2d 1439, 1441 (10th Cir. 1991). However, a charging document "need only meet minimal constitutional standards, and we determine the sufficiency of an indictment by practical, rather than technical, considerations." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).

Absent constitutional protections, parties in criminal proceedings, unlike civil proceedings, need not "lay their evidentiary cards on the table before trial." *United States v. Pope*, 613 F.3d 1255, 1259–60 (10th Cir. 2010). Instead, a charging document is generally sufficient if it uses the language in the statute to describe the offense and includes "such a statement of the facts and circumstances as will inform the accused of the specific offence [sic], coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (quotations omitted). The statement of facts and circumstances need only "include[] the date, place, and nature of illegal activity[;] it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Powell*, 767 F.3d 1026, 1030 (10th Cir. 2014) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)).

Although "Spartan [in] prose," *Pope*, 613 F.3d at 1257, the Information in this case provides a "plain, concise and definite written statement of the essential facts constituting the offense charged[,]" Fed. R. Crim. P. 7(c)(1). The Information is sufficient because it uses the language of the regulations to describe Mr. Laney's alleged conduct and identifies the date and place the offense allegedly occurred. (*See* Doc. 1.) The Information lists the elements of the regulations, apprises Mr. Laney of the charges, and provides sufficient information to protect Mr.

Laney against the risk of double jeopardy. *See Walker*, 947 F.2d at 1441. Consequently, the Information is sufficient.

## IV.   CONCLUSION

The Government superseded the violation notices with the Information. The Court may only consider whether the facts alleged in the Information are legally sufficient, and they are.

**THEREFORE**,

**IT IS ORDERED** that the United States Magistrate Judge's Order Granting Defendant's Motion to Dismiss Charges (Doc. 13) is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this order.

*[signature]*
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**